UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RUDI SCHMEER,

     Petitioner,

v.                                     Case No. 3:14cv285/MCR/CJK

WARDEN OF THE SANTA ROSA
COUNTY JAIL, et al.,

     Respondents.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. (Doc. 1). The United States government has submitted a response in opposition. (Doc. 11). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, the undersigned concludes that the petition should be denied and petitioner's extradition continued.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a German citizen and permanent resident of the United States of America, is in the custody of the Attorney General of the United States pending extradition to Germany. On April 28, 2014, the United States filed a complaint under 18 U.S.C. § 3184 requesting that this court issue a warrant for petitioner's arrest.

(Case No.  3:14mj69/EMT).[1]   After  the  court  granted  the  request,  petitioner  was arrested  and  an  extradition  hearing  was  held  before  United  States  Magistrate  Judge Elizabeth  M.  Timothy  on  May  19,  2014.   At  the  hearing,  the  United  States government submitted into evidence various documents from the German government in support of the extradition request, including an affidavit from a German prosecutor outlining the evidence against the petitioner.  (Case No. 3:14mj69/EMT, doc. 14-1). In these documents, the German government alleges that petitioner failed to file any tax returns for a period ranging from 1997 through 2003, "thereby avoiding taxes in a  total  amount  of  2,861,622.69  German  Marks."   (Doc.  11,  p.  3).   Following  the hearing, Judge Timothy determined that petitioner should be extradited to Germany. Petitioner  now  brings  the  instant  habeas  petition  challenging  Judge  Timothy's extradition order.

## DISCUSSION

Because "[t]here is no right to appeal extradition certification determinations," collateral review of an extradition order may be accomplished through submission of a writ of habeas corpus.  *Noriega v. Pastrana*, 564 F.3d 1290, 1295 (11th Cir. 2009); *see also Kastnerova v.  U.S.*, 365 F.3d 980 (11th Cir. 2004).  Collateral review of an extradition  order  is  "'narrow'"  and  not  an  avenue  "for  rehearing  the  magistrate's findings.'"  *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1163 (11th Cir. 2005).  Instead, review is "generally limited 'to determining whether the magistrate had jurisdiction, whether the offense charged is within the treaty, and . . . whether there was any evidence  warranting  the  finding  that  there  was  reasonable  ground  to  believe  the

---

[1] Case No. 3:14mj69 refers to the underlying extradition hearing conducted by Judge Timothy.

accused guilty.'"[2]  *Noriega*, 365 F.3d at 1295 (quoting *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828 (11th Cir. 1993)) (alterations in original).  The court reviews findings of fact for clear error and questions of law *de novo*.  *Afanasjev*, 418 F.3d at 1163.

Petitioner raises four arguments in support of his petition: 1) the charged crimes under German law do not satisfy the dual criminality requirement necessary for extradition under the applicable treaties;[3] 2) the government did not submit evidence establishing probable cause that petitioner committed the alleged offenses; 3) petitioner was not afforded due process during the extradition hearing; and 4) the German statute of limitations has run on the alleged offenses.  (Doc. 1).

Dual Criminality

Petitioner first argues that the crime with which he is charged in Germany, tax evasion, does not sufficiently correspond to its United States counterpart and, therefore, dual criminality under the applicable treaties is not established.[4]  Dual

---

[2] For reference, "the relevant and applicable treaty provisions in full force and effect between the United States of America and the Federal Republic of Germany" include the "Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed on June 20, 1978 ('the 1978 treaty'), the Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed October 21, 1986 ('the 1986 Supplementary Treaty'), and the Second Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed on April 18, 2006 ('the 2006 Second Supplemental Treaty')."  (Case No. 3:14mj69/EMT, doc. 1-1, p. 2)*.*

[3] Petitioner is represented by different counsel on his petition for writ of habeas corpus than he was at the extradition hearing.  At the extradition hearing, petitioner's counsel conceded that the charged crimes are covered by the applicable treaties.

[4] According to section 370 of the German Fiscal Code, under which petitioner is charged, "[a] penalty of up to five years' imprisonment or a monetary fine shall be imposed on whoever . . . fails to inform the revenue authorities of facts of substantial significance for taxation when obliged to do so. . . .   In particularly serious cases, a penalty of between six months and ten years'

criminality "'refers to the characterization of the relator's criminal conduct insofar as it constitutes an offense under the law of the respective states'" and "mandates that a prisoner be extradited only for conduct that constitutes a serious offense in both the requesting and surrendering country." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000) (quoting *U.S. v. Herbage*, 850 F.3d 1463 (11th Cir. 1988)). The corresponding offenses, however, need not be mirror images of one another. *In re Extradition of Batchelder*, 494 F. Supp. 2d 1302, 1307 (N.D. Fla. 2007). Indeed, "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects the same in the two countries." *Collins v. Loisel*, 259 U.S. 309, 312 (1922). Dual criminality requires only that the "particular act charged is criminal in both jurisdictions," *id.*, and that "[t]he essential character of the transaction is the same . . . ." *Wright v. Henkel*, 190 U.S. 40, 58 (1903); *see also In re Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986) ("[E]ach element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is enough that the conduct involved is criminal in both countries.").

The German arrest warrant, included with the extradition papers, alleges that petitioner is wanted on charges of "fraudulent tax evasion." (Doc. 1-1, pp. 65-66).

---

imprisonment shall be imposed. A case shall generally be deemed to be particularly serious where the perpetrator . . . deliberately understates taxes on a large scale or derives unwarranted tax advantages. . . . Taxes are deemed to have been understated in particular where they are not assessed at all, in full or in time." The American statute at issue, 26 U.S.C. § 7201, provides that "[a]ny person who wilfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony. . . ." 26 U.S.C. § 7201. At the extradition hearing and in several pleadings, the respondents erroneously cited to 26 U.S.C. § 7203 instead of 26 U.S.C. § 7201.

The German prosecutor avers that petitioner will be tried on fifteen counts of tax evasion in violation of Section 370 of the German Fiscal Code based on allegations that petitioner continued to live in Germany while claiming he resided elsewhere for the purpose of avoiding payment of significant sums of income tax assessed under German law.[5]

Petitioner disputes that the offenses with which he is charged constitute criminal infractions under American law, pointing to the intent element set forth in 26 U.S.C. § 7201 and the absence of such an element under German law. Specifically, petitioner argues that to establish tax evasion under § 7201, the government must show that the accused acted with the "specific intent to evade paying taxes when [the accused] knew he was required by law to pay those taxes." (Doc. 1, p. 7); s*ee* § 7201.  Consequently, according to petitioner, an individual charged with tax evasion under United States law can avoid conviction by establishing "good faith mistake" or negligent failure to pay taxes, which negate the intent component of the crime.  Because German law does not require intent, petitioner maintains, no such defense is available under German law, thereby defeating dual criminality.

Although the German statute does not include the word "willfully," as does the American statute, it plainly criminalizes intentional conduct.  Indeed, the statute provides for enhanced penalties for individuals who "deliberately understate taxes on a large scale."  Moreover, it is clear from the record, including the language of the arrest warrant and the allegations against petitioner, that German officials are charging petitioner with deliberate conduct.  Thus, while the language of the two laws

---

[5] According to German officials, petitioner "consciously l[ied]" to German authorities concerning his tax eligibility.  (Case No. 3:14mj69/EMT, doc. 1-1, p. 88).

may not be identical, both laws criminalize the conduct with which petitioner is charged – "fraudulent tax evasion." *See In re Extradition of Russell*, 789 F.2d at 803; *see also Kelly v. Griffin,* 241 U.S. 6, 14 (1915) (holding that dual criminality was established where Canadian and Illinois perjury laws differed as to whether perjured statement must concern evidence that was "material" for conviction); *Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir. 1989) ("While dual criminality does not require identical statutes, the provisions must be 'substantially analogous.' Statutes are substantially analogous when they 'punish conduct falling with the broad scope' of the same 'generally recognized crime.'" (citations omitted)); *United States v. Sensi,* 879 F.2d 888, 893 (D.C. Cir. 1989) (concluding dual criminality existed where British law required successful completion of mail fraud and United States law allowed for conviction without a successful theft); *In re Russell,* 789 F.2d 801, 804 (9th Cir.1986) (finding dual criminality existed despite Australian law requiring no "overt act" necessary to commit fraud, where American law required such an act).

Furthermore, the fact that petitioner may not be able to avail himself of all defenses available under American law does not preclude a finding of dual criminality. As the Eleventh Circuit observed, the fact that "'defenses may be available in the requested state that would not be available in the requesting state, or that different requirements of proof are applicable in the two states, does not defeat extradition under the dual criminality principle.'" *Gallo-Chamorro*, 233 F.3d at 1307 (quoting Restatement (Third) of Foreign Relations Law of the United States § 476, comment d (1987)). Based on the text of the applicable treaties and statutes, as well as the pertinent case law, therefore, the undersigned finds dual criminality established

in this instance.[6]

<u>Probable Cause</u>

Second, petitioner claims a lack of sufficient evidence to support Judge Timothy's finding that probable cause existed to show petitioner committed the alleged tax crimes. (Doc. 1, p. 10). In an extradition hearing, "[t]he magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson*, 783 F.3d 776, 815 (9th Cir. 1986). In this role, the magistrate "'must accept as true all of the statements and offers of proof by the demanding state . . . .'" *In re Extradition of Cheung*, 968 F. Supp. at 794 n.6 (quoting *In re Extradition of Marzook*, 924 F. Supp. 565, 592 (S.D.N.Y. 1996)). Contrary to petitioner's position, "a Defendant may not present evidence that contradicts the evidence presented by the Government, but may present only explanatory evidence." *In re Extradition of Batchelder*, 494. F. Supp. 2d at 1306 (defining explanatory evidence as "evidence rebutting probable cause, not evidence in defense"). The policy underlying these limitations is clear and applicable in the instant situation–an extradition hearing is not a criminal trial nor should it evolve into one. *Collins*, 259 U.S. at 316.

The government summarized the evidence in support of the extradition motion both in its pleadings (Case No. 3:14mj69/EMT, docs. 1, 8) and during the hearing itself (Case No. 3:14mj69/EMT, Doc. 19, pp. 14-16). In particular, the arrest warrant and accompanying documents submitted from the German prosecutor offer a wealth

---

[6] In so finding, the court notes that "'extradition treaties, unlike criminal statutes, are to be construed liberally in favor of enforcement because they are "in the interest of justice and friendly international relationships."'" *In re Extradition of Cheung*, 968 F. Supp. 791, 798 (D. Conn. 1997) (quoting *U.S. v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997)).

of information from which probable cause can be established. (Doc. 1-1, pp.65-129). The documents contain details of the German investigation and affidavits from German officials. For example, the evidence shows petitioner received income during a time he was still subject to German tax laws due to his continued use of his German residence, as evidenced by his receipt of utility bills and correspondence there. (Case No. 3:14mj69/EMT, doc. 1-1, pp. 88-89). Although petitioner claimed to be residing in France during portions of the relevant time period, the German government alleges that petitioner paid no taxes to the French government during that time, and French authorities indicated that petitioner's residence in France was "a pretend residence." (Case No. 3:14mj69/EMT, doc. 1-1, p. 91). Accepting as true all of the statements and evidence presented by the German government, the undersigned finds the magistrate judge's probable cause determination amply supported by the evidence of record. *See Quinn,* 783 F.3d at 791 ("Because [a] magistrate's probable cause finding is . . . not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,' it must be upheld if there is any competent evidence in the record to support it.'").

Violation of Due Process Rights

Petitioner next claims his due process rights were violated when Judge Timothy denied him the opportunity to present evidence which would have shown he was not a resident of Germany during the periods in question and, consequently, could not have committed the alleged tax offenses. (Doc. 1, p. 12). The evidence petitioner sought to introduce at the hearing included documents and testimony pertaining to his residence at the time of the alleged offenses. Such information would not clarify the issues before the court and, instead, simply conflicts with the evidence offered by the

government, which the magistrate must accept as true.[7]  *See In re Extradition of Cheung*, 968 F. Supp. at 794 n.6; *In re Extradition of Batchelder*, 494. F. Supp. 2d at 1306.  Judge Timothy thus properly barred petitioner's proffered testimony and submission of documents.

<u>Statute of Limitations</u>

Petitioner's final claim concerns the applicable statute of limitations under German law.  (Doc. 1, p. 13).  Under the 1978 Treaty between the United States and Germany, "[e]xtradition shall not be granted if at the time the Requested State receives the request for extradition the prosecution . . . has become barred by lapse of time under the law of the Requesting State."  (Case No. 3:14mj69/EMT, doc. 1-1, p. 37).  The parties agree that Germany has a five-year statute of limitations applicable to crimes of tax evasion.  The parties also seem to agree that the German Penal Code imposes an "absolute" limitations period of "double the statutory period of limitation . . . which is 10 years in the present case."  (Case No. 3:14mj69/EMT, doc. 1-1, p. 102).

Petitioner argues that prosecution is barred by the five-year limitations period because the initial indictment was filed on August 16, 2006, outside the five-year statute of limitations window for many of his alleged tax crimes.  The government disagrees, arguing that the limitations period repeatedly was interrupted and thus has yet to expire.  At the extradition hearing, Judge Timothy noted that the German

---

[7] Petitioner's testimony would not have "obliterate[d]" probable cause, as he claims in his petition.  The evidence submitted by the government in support of extradition indicated that petitioner continued to live at his German residence despite his averments that he no longer lived there.  Thus, petitioner's testimony to that point would have served only to contradict the evidence presented by the government and would function as a defense to the alleged charges.

authorities "specifically addressed" the statute of limitations issue and explained that, under German law, the statute of limitations may be "interrupted" by "certain actions" and that such an interruption allows the limitations period to commence anew. (Case No. 3:14mj69/EMT, doc. 19, pp. 5-6). The German authorities specified a variety of acts that may interrupt the running of the statute of limitations (Case No. 3:14mj69/EMT, doc. 1-1, pp. 102-03) and concluded that, in this case, "the statute was interrupted on numerous occasions, most recently on January 31, 2011. (Case No. 3:14mj69/EMT, doc. 19, p. 6). According to the German authorities, "[the statute of limitations] started anew at that point and would run through January of 2016 . . . ." The United States government agrees and also argues that the ten-year statute has not expired, pointing to the German authorities' position that the alleged crimes were committed on September 30, 1999, at the earliest, and petitioner's "trial was . . . opened" on August 6, 2007, "within the ten-year period maximum allowed by law." (Case No. 3:14mj69/EMT, doc. 1-1, p. 105).

As the Ninth Circuit Court of Appeals has recognized, "[i]t may not always be clear whether a prosecution is time-barred, and the general rule allows the prosecuting state to resolve the [statute of limitations issue]." *Kamrin v. U.S.*, 725 F.3d 1225, 1227 (9th Cir. 1984); *see Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011) ("U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty." (citing *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 565 (2d Cir.1963))). Here, the German government's interpretation of the applicable statutes of limitation is consistent with the information available to the court. The undersigned thus defers to that interpretation, as did Judge Timothy. If

petitioner believes his claims are barred by the statute of limitations under German law, he is free to raise such arguments before the German courts.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (doc. 1), be DENIED.

2.  That the Clerk be directed to close the file.

At Pensacola, Florida, this 25th day of August, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).